IN THE MATTER OF THE PETITION OF THE GILBERT ELEVATED RAILWAY COMPANY, RELATIVE TO ACQUIRING REAL ESTATE IN THE CITY OF NEW YORK.

*Damages for the taking of real estate in a street in a city, for the purposes of an elevated railroad — right of an owner abutting on a street dedicated to public use — a railroad cannot be constructed thereon without his consent — right of an abutting owner to light, air and access to his lot — measure of damages for any interference therewith — when an owner of a lot, bounded on the side or line of a street, takes title to the bed of the street — 2 R. S. (6th ed.), 523, part 1, chap. 18, tit. 15, § 14.*

Upon the application of the Gilbert Elevated Railway Company, the General Term made an order, appointing commissioners for the purpose of ascertaining and appraising the compensation to be made to the owners of certain real estate situated in the city of New York, proposed to be taken for the purposes of the said railway company. The parcels of land to be taken were situated within the bed of South Fifth avenue, which is seventy-five feet wide. South Fifth avenue, which embraces what was formerly Laurens street, was widened in 1870 by adding twenty-five feet on the westerly side, by proceedings instituted under the act of 1813. Laurens street was laid out and dedicated by

a former owner of the lands as a public road, and no compensation was ever paid by the public, either for the fee or for the easement to use the land for a public road.

The lots owned by a portion of the claimants abutted on the easterly side of South Fifth avenue, and were described in the deeds conveying them as bounded by "Laurens street," and not as "along the easterly line" of Laurens street.

*Held,* that the owners of these lots had an estate in fee in the easterly twenty-five feet of the avenue, subject only to the easement of the public to use the same as a street.

That, as an incident to this fee, they had the right to have no new burden cast upon the land without their consent, or compensation being made to them therefor.

That they had in this case the further right to dig vaults under the street without making any payment to the city for a license therefor.

That they had, apart from the fee and this incident, a special, private, property right that the air, light and access afforded by an open public street should not be taken without their consent or compensation.

That the amount of their damages should be determined by considering what the property was fairly worth before the taking by the railroad, what the property left after the taking was fairly worth, and awarding the difference as the compensation for the taking.

The lots owned by a portion of the claimants abutted on the westerly side of South Fifth avenue, and were described in the deeds conveying them as bounded "by Laurens street," and not as "along the westerly line of Laurens street."

*Held,* that the owner thereof had an estate in fee in the central section of South Fifth avenue — originally the western half of Laurens street — subject only to the easement of the public to use the same as a public road.

That when the city took the fee to the present westerly section of South Fifth avenue in trust, to keep the same open as a public street, there was left in original abutting owners a naked fee with the ultimate right of reversion therein, and that this fee was of the same quality as the absolute fee which they had in the central section subject to the public easement, and of the same quality as the absolute fee of those of the claimants of the east side in the easterly section and that its value is the same, less the amount which the owners would have to pay to the city for vault purposes.

The lots owned by a portion of the claimants abutted some on the east and some on the west side of South Fifth avenue, and were described in the deeds as bounded "along or by the side or line of the street," and not "by the street." The commissioners decided that these owners had no title to the land in the street, but found, as matter of fact, that the light, air and access of the claimants' lots were interfered with and taken to an appreciable extent by the petitioner's acquisition of the lands in question, and, as matter of law, that these were private property rights, and, as easements, appurtenant to the lots fronting on the street or otherwise, belonged to the abutting property owners, whether they had or had not title to the land itself in the street.

*Held,* that the commissioners erred in holding that the owners, whose lots were bounded "along or by the side or line of the street," acquired no title to the

land in the street; that, as the conveyances contained no reservation of an interest in the bed of the street by any appropriate phrase, covenant or particularity of description, which left no doubt as to the intention of the grantors so to do, and as there was no evidence that the grantors did not intend to convey their entire estate, or that they intended to except the title conveyed from the operation of the general rule that a lot bounded on a street extends to its center, that rule applied, and the abutting owners took the fee to one-half of the bed of the street, subject to the public easement, as aforesaid.

APPEALS by both parties from appraisals and reports of commissioners.

On December 28, 1877, the General Term made an order under the provisions of the Revised Statutes (part 1, chap. 18, tit. 15, § 14, et seq. [6th ed.], vol. 2, p. 523), on the petition of the railway company, appointing Messrs. William Orton, John H. Sherwood and Edward Mitchell, commissioners "for the purpose of ascertaining and appraising the compensation to be made to * * * Amos F. Eno and Amos R. Eno, as owners of the real estate so proposed to be taken for the purposes of the said Gilbert Elevated Railway Company, which said real estate is situated in said city and county of New York and is described," etc. Mr. Orton having died, by order dated May 14, 1878, Mr. John H. Clark was appointed in his place. The pieces of property in question were described in the petition as parcels Nos. 3, 4, 5, 6 and 8, belonging to Amos R. Eno, and No. 7 belonging to Amos F. Eno. All were described as being situated within the bed of South Fifth avenue.

By order dated January 8, 1879, the description of parcels Nos. 4 and 5 was amended. Upon the trial before the commissioners an amendment was made as to the other parcels. As thus amended the parcels consist of strips on each side of the center line of South Fifth avenue, between the center line and a line seven feet from the side. The avenue is seventy-five feet wide.

The commissioners made reports as to all the parcels. They bear date April and May, 1879. All the commissioners joined in the report as to parcel No. 5 and as to a part of parcel No. 3. In the other cases Messrs. Mitchell and Sherwood made a majority and Mr. Clark a minority report.

Parcel No. 3 is sixty-one feet five inches long. It is in front of Nos. 223, 225 and 227 South Fifth avenue, between Canal and Grand streets, on the east side. The compensation awarded was

$7,141 —$526.50 being awarded to unknown owners, and the residue, $6,614.50, to Amos R. Eno. Mr. Clark united in the report so far as concerned the award of $526.50 to unknown owners, and $2,725, part of the $6,614.50, awarded to Mr. Eno.

Parcel No. 4 is fifty feet seven inches long. It is in front of Nos. 160 and 162 South Fifth avenue, on the west side, between Broome and Spring streets. The award was $4,562.50. It was made to "Amos R. Eno, as owner, or to persons interested," etc.

Parcel No. 5 is seventy-five feet long. It is in front of Nos. 119, 121 and 123 South Fifth avenue, between Spring and Prince streets, on the east side. The award was $8,500. All the commissioners joined in the report.

Parcel No. 6 is fifty feet long. It is in front of Nos. 132 and 134 South Fifth avenue, on the west side, between Spring and Prince streets. The award was $4,562.50.

Parcel No. 7 is forty-eight feet one inch long. It is in front of Nos. 124 and 126 South Fifth avenue, between Spring and Prince streets, on the west side. The award was $5,062.50.

Parcel No. 8 is twenty-five feet long. It is in front of No. 58 South Fifth avenue, between Houston and Bleecker streets, on the west side. The award was $2,531.25.

The order confirming the report of the commissioners directed that the $526.50, awarded to unknown owners for a part of parcel No. 3, be deposited in the Shoe and Leather Bank. It made the same direction as to the $4,562.50, awarded to Amos R. Eno, as owner, or to persons interested, for the limited estate, in parcel No. 4. It directed that the residue of the awards be paid to the Messrs. Eno.

No. 58 South Fifth avenue, in front of which parcel No. 8 is situated, is an unimproved lot without buildings upon it. The value of a lot on South Fifth avenue in the absence of the railroad was, without contradiction, proved to be about $22,000 to $25,000.

The property in front of which the other parcels are situated consisted of lots and buildings, the buildings representing an additional value for each twenty-five feet of front of about $30,000 to $40,000.

South Fifth avenue embraces what was formerly Laurens street, widened from fifty feet to seventy-five feet by taking twenty-five

feet on the westerly side under proceedings under the act of 1813. Laurens street was laid out through what was known as Bayard's West Farm, by Nicholas and Stephen Bayard. They caused a map of the farm to be made, laying it out into streets and lots; the lots were described by numbers. The lots were conveyed by the map numbers, and were described as " bounded by the streets."

The reports of the commissioners were before the decision of the Court of Appeals in the Story case.

The opinion of the majority of the commissioners was that the Messrs. Eno were entitled to compensation for so much of the strips as lay in the bed of what was Laurens street, and that as abutting owners they were also entitled to compensation for deprivation of light, air and access.

Mr. Clark coincided with the majority of the commissioners that an award should be made for the strips which were taken from the Messrs. Eno. It was his opinion, however, that they had no interest as abutting owners, and that as the strip on the westerly side of the avenue was separated from the abutting property by the widened twenty-five feet of the avenue, it was of no value.

South Fifth avenue was widened in 1870. It was at an expense to the property on the west side, of about $1,500 for each twenty-five feet lot in addition to the loss of the strips taken; and at an expense to the property on the east side of the avenue of about $3,000 for each lot.

The company appeals generally. It contended before the commissioners that the Messrs. Eno had no other right in the avenue than the naked fee title to such parts of the parcels as lay in the bed of old Laurens street, and that as such title was subject to a perpetual easement in the public to use the avenue as a street, its only value was the value of the reversion. The Messrs. Eno contended that, as abutting owners, they were entitled to light, air and access (as has been said, this was before the Story decision); but that, whether that were so or no, the ownership of the plots, subject only to the street uses, secured to them immunity from the railroad, and if that were to be taken from them an award was to be made accordingly. The Messrs. Eno appeal, first, for the insufficiency of the awards, on the proposition that no allowance was made for improvements; and, secondly, that the awards directed to

be deposited in the Shoe and Leather Bank should have been awarded to them. The majority of the commissioners delivered the following opinion:

OPINION OF COMMISSIONERS:

For the purpose of valuing the parcels under consideration on South Fifth avenue, its road-bed may be divided into three longitudinal sections, viz., the easterly, central and westerly sections, each twenty-five feet wide. The *easterly* and *central sections* together, constitute what formerly was the road-bed of Laurens street. The westerly section was taken by the city under the act of 1813, on the widening of Laurens street in 1870. It is conceded that a former owner of the lands laid out and dedicated Laurens street as a public road, and it is not claimed that any compensation has ever been paid by the public either for the fee or for the easement to use the land for a public road.

I*a*. The claimants whose lots abut on the easterly section, and whose deeds bound them " by Laurens street," and not " along the easterly line " of Laurens street, therefore, have an estate in fee in that section subject only to the easement of the public to use the same as a public road.

*b*. The claimants whose lots abut on the westerly side of South Fifth avenue, and whose deeds bound them " by Laurens street," and not " along the westerly line of Laurens street," have an estate in fee in the central section, subject only to the easement of the public to use the same as a public road.

No question is made as to the kind of ownership or estates in the easterly and central sections, where the deeds do not confine the ownership to the *line* or *side* of the street. The only question as to those sections is one of value in such cases. The railway company insists that the easement of the public will be so perpetual in its use that the naked fee in the owner is of only nominal value; that the " taking," by the railway company, of the estate in the land to which it is entitled by law is only a nominal taking, and that the legislature having declared the railway use to be a public use, the respondents are deprived of nothing except in name.

The claimants insist that the taking is a new burden different from the present easement, and that the residue of their lands will

be depreciated in value by the taking, and that substantial damages should be awarded to protect them from loss by reason of the taking. The legislature has no power to authorize a steam railroad to take a public highway or turnpike road for the construction of a steam railroad, without making compensation to the owner of the fee of the lands in the highway or turnpike, or without his consent. (*Trustees of the Presbyterian Society in Waterloo* v. *Auburn and Rochester Railroad Company*, 3 Hill., 569, quoted with approval in *Williams* v. *New York Central Railroad Company*, 16 N. Y., 105.)

SELDEN, J., in delivering the opinion of the court in this last case, says (p. 109): " But it is unnecessary to refine upon this case. Any one can see that to convert a common highway, running over a man's land, into a railroad, is to impose an additional burden upon the land and greatly to impair its value. As no compensation has, in this case, been made to the owner, his consent must in some way be shown. The argument is that, as he has consented to the laying out of a highway upon his land, *ergo*, he has consented to the building of a railroad upon it; although one of these benefits his land, renders access to it easy, and enhances its price, while the other makes access to it both difficult and dangerous, and renders it comparatively valueless. Were the transactions between two individuals every one would see at once the injustice of the conclusion attempted to be drawn. It is the public interest supposed to be involved which begets the difficulty, and it is just for this reason that the Constitution interferes for the protection of individual rights, and provides that private property shall not be taken for public use without compensation, a provision no less necessary than just, and one which it is the duty of the courts to see honestly and fairly enforced.

" The case stated by the learned justice, who delivered a dissenting opinion in the Supreme Court, is a striking illustration of the injustice that would frequently be done under the rule contended for by the defendants. A street was laid out through a man's land, and he was assessed several hundred dollars for benefits in addition to the land taken; and before the street was opened it was taken by a railroad company and converted into the track of their road. The owner lost his land, had to pay several hundred dollars, and

had the annoyance of the railroad besides, while the railroad company got the road for nothing.

"The case of *Inhabitants of Springfield* v. *Connecticut River Railroad Company* (4 Cush., 63) shows what the Supreme Court of Massachusetts thought of the argument that the uses are the same. It was insisted there, on the part of the defendants, that the power conferred upon them by the legislature, to build their road between certain *termini*, gave them by necessary implication the right to build their track upon any intervening highway. But Chief Justice Shaw, in reply to this argument, says: "The two uses are almost, if not wholly, inconsistent with each other, so that taking the highway for a railroad will nearly supersede the former use to which it had been legally appropriated. The whole course of legislation, on the subject of railroads, is opposed to such a construction."

"I concur with the learned chief justice, and have no hesitation in coming to the conclusion that the dedication of land to the use of the public as a highway is not a dedication of it to the use of a railroad company; that the two uses are essentially different, and that, consequently, a railway cannot be built upon a highway without compensation to the owners of the fee. The legislative provisions on the subject were probably intended, as was intimated in *The Presbyterian Society of Waterloo* v. *Auburn and Rochester Railroad Company* (*supra*), to confer the right, so far only as the public easement is concerned, leaving the companies to deal with the private rights of individuals in the ordinary mode. If, however, more was intended, the provisions are clearly in conflict with the Constitution, and cannot be sustained."

In the case of *Mahon* v. *The New York Central Railroad Company* (24 N. Y., 658), the following facts appear: The Utica and Schenectady Railroad Company, to whose rights and liabilities the defendants succeeded, had, in 1836, in pursuance of an act of the legislature requiring it to do so, purchased all the rights of the Mohawk Turnpike Company, which was incorporated April 4, 1800. The plaintiff brought this action for damages against the defendant for depriving him of the use of the highway, and for the construction and operation of the railroad upon the land extending to the middle of the highway, without purchasing the land or causing plaintiff's damages to be assessed. Clerke, J., in the opinion of the court, at page 660, says:

" The rule that owners of land bounded on public highways, *prima facie*, own the land to the center of the highway, is not alone applicable to ordinary highways, but also to turnpikes (*Hooker* v. *The Utica and Minden Turnpike Co.*, 12 Wend., 371); and although the general act relating to turnpike companies, passed March 13, 1807, declares when the president and directors pay the owners of the lands the sums assessed and awarded by the appraisers in their inquisition, they shall have and hold to them and their successors and assigns forever, the lands and tenements described in their inquisition ; yet it has been always held that this and the special act of incorporation vests in the company the title to the lands over which the road passes only for the purposes of the road, and when the road is abandoned, the land reverts to the original owners. The company only acquired such an estate in the land taken by it as was necessary to fulfill the end and intent of the cor poration, and could hold it to no other use, intent or purpose. Having ceased to occupy the land for the purpose of a turnpike road, the Mohawk Turnpike Company, in transferring it, in effect abandoned it; and although they were authorized by the legislature to transfer to the Utica and Schenectady Railroad Company, this could not, constitutionally, deprive the original owners of the land of their right of reversion " without compensation. (*Davis* v. *Mayor, etc., of New York*, 14 N. Y., 526 ; *Williams* v. *N. Y. Central R. R. Co.*, 16 id., 97.)

" An easement for the purpose of a highway does not authorize, as against the proprietor of the soil, the laying down of a railroad upon the track of the highway. The use of the land for a railroad is totally different from that public right of passage for which highways were designed."

The case of *Wager* v. *Troy Union Railroad Company* (25 N. Y., 526) reiterates the doctrine decided in the cases above alluded to. This was an action of trespass by an owner of lands, in the city of Troy, against the defendant, for constructing a railroad in the street in front of his lands without his consent and without compensation to him, although with the assent of the city corporation. It was held that the action could be maintained and that there was no distinction in this respect between the street of a city and a highway in the county. (Quoting *Bissell* v. *N. Y. Central R. R. Co.*, 23

N. Y., 61.)   All the above cases are approved, and the principle contained therein is extended, so as to be made applicable to horse railroads, in *Craig* v. *Rochester City and Brighton Railroad Company* (39 N. Y., 404).   This case was one in which the owner of a lot in the city of Rochester, on East avenue, extending to the center of the street, obtained a perpetual injunction to restrain the defendant from laying a horse railroad track in the public street in front of his lot, without his consent, and without taking legal proceedings to acquire it.   The Court of Appeals sustained the injunction.   Five out of the six judges who sat in the Court of Appeals in the Mahon case (*supra*), agreed that the appropriation of the land of a turnpike company, which was an appropriation in fee, did not authorize its use for a railroad.   (See 24 N. Y., page 661.)   The only conclusion to be drawn from these cases is that the claimants, whose deeds carry them to the middle of old Laurens street, are to be compensated as for a fresh taking of the lands in the easterly and central sections of South Fifth avenue.

II.   It remains to consider what title was left in the claimants, as original owners, whose lots abut on the westerly section, after the taking by the city from them of the fee of that section, under the act of 1813, in the proceedings for the widening of Laurens street.   This question, as applicable to this case, is open and new.   *In the Matter of Gilbert Elevated Railway Company* (70 N. Y., 361, at page 375), Church, C. J., in delivering the opinion of the court, that the rapid transit acts provided for compensation for any property rights the abutting owners may have in the streets, and that the act was constitutional, says:

" The amount or extent of the damages are questions not properly before the court.   *   *   *   To determine what particular occupation of the streets is to be deemed a legitimate public use, involves important and delicate questions.   They were very much debated in this court in the surface railroad cases and the principles adjudicated in those cases will be regarded as obligatory upon the court in deciding future cases.   Whether the structure contemplated to be built and operated will be an invasion of the property of abutting owners in any of the streets, entitling them to some remedy for damages, or whether it will be regarded as a legitimate use of the streets for the benefit of the public, the inconvenience and annoyance of which

private abutting ownership is subject to, cannot, with propriety, be adjudicated upon these appeals."

The act of 1813, under which the city took title to the westerly section, is that the corporation of the city shall be seized in fee of the lands, and may take possession of the same. In trust, nevertheless, that the same be appropriated and kept open for or as part of a public street in like manner as the other public streets in said city are and of right ought to be. (2 R. L., 1813, p. 414, chap. 86, § 178.)

The commissioners are of opinion that when the city took the fee to the westerly section of South Fifth avenue, in trust, to keep the same open as a public street, there was left in the original owner an estate or interest exactly the same in quality that the Court of Appeals decided that he retained after the turnpike company took the fee in the bed of its road.

The fee taken by the turnpike company was not, in terms, qualified or restricted, or limited or conditioned, in any way whatever. The act was "that the said president and directors aforesaid, upon paying the said several owners of the said lands the several sums so assessed, * * * shall and may have and hold to them and their successors and assigns forever the lands * * * described." (Laws 1807, chap. 38 [ed. of Barber], p. 108.) The city takes the fee in terms, but only for one specified purpose, viz., in trust to keep the land open as a public street. The fee is not an absolute, unqualified unconditional fee. The city cannot sell or convey it, or incumber it in any way or consent that it shall be incumbered. It cannot build upon it, or permit others to do so. The land could not be sold for the debts of the city, for its estate is only a trust estate. The act provides what the city can do with the fee, and that is to keep it open as a public street, and that is all the city can do with it and is all the right the public has taken away from the original owner. The whole duty, power and trust of the city, in the fee, is to keep it open, the fee being taken because the city can thereby better perform its duty and its trust in that regard than if any other quality of estate were taken.

The petitioners rely upon the case of *The People* v. *Kerr* (27 N. Y., 188), as an authority to show that abutting property owners have no right or estates in the streets left in them after the city has

acquired title to the land in the street under the act of 1813.   That was an action by owners of lots on Seventh avenue and Broadway to restrain a horse railroad company from laying tracks in the street in front of the lot owners.   It was found, as a fact (p. 210), that all the lands in the street had been taken and paid for by the city under the act of 1813.   The complaint was dismissed, and the Court of Appeals affirmed the judgment.   The following extract is quoted by the petitioners to sustain their views (Wright, J., pp.210, 211):

"It is found, as a fact, and conceded, that under this act of 1813 all the lands in the several streets on which the plaintiffs are abutting landowners, were either taken for streets, under section 178 of that act, after compulsory appraisal, or ceded by the lot owners upon an agreed valuation pursuant to such section.   *   *   *   After such relinquishment and vesting of the fee in the city corporation, no property, estate or interest in the land included in the streets opened under the act, remained in the adjacent proprietors."

"Reporter's Note.— Davis, J., did not sit in the case; all the other judges concurred substantially upon the grounds stated by Wright, J."   (P. 215.)

We may here note that the learned judge, who wrote the opinion above quoted from, cited as the only authority for the doctrine enunciated the case of *Heyward* v. *The Mayor of New York* (3 Seld., 314).   In that case the city had taken lands of Mrs. Ann Rogers for an alms-house in the Ninth ward, under an act of the legislature (Laws 1818, chap. 244), in the same manner, etc., as by the Laws of 1816, chapter 53, the city was authorized to take lands for a public market.

The act of 1816 thus referred to, and made part of the act of 1818, provided that the city, on payment, should become and be seized in fee simple absolute of the lands taken.   The city having abandoned the use of these lands for alms-house purposes, sold them. The representatives of Mrs. Rogers brought this suit on the ground that the public use having ceased, the lands reverted to the original owners.   The court held otherwise, on the ground that the fee was an absolute fee.   In short, under both of these acts, the city took the land as proprietors and not in its political capacity.   Such a case cannot be an authority for the *dictum* in *People* v. *Kerr*, above quoted.   Moreover, the whole of the reporter's note in the *People*

v. *Kerr* is as follows: "DAVIES, J., did not sit in the case. All the other judges concurred, substantially, upon the grounds stated by WRIGHT, J., without passing upon the distinction between the extent of the public right in city streets and country roads, and other questions discussed by EMOTT, J.

"ROSEKRANS, J., was of the opinion that the power of the legislature extended only to governing the mode of passing upon the surface streets, and that, subject to this, the city of. New York had all the rights of the original proprietor of the soil, and might be entitled to compensation for any privation thereof.

"BALCOLM and MARVIN, JJ., suggested that, independent of the public right in streets, whether acquired by dedication or confiscation, and of any naked fee which might remain in the original owner, with the possible ultimate right of reverter, there might be a private right in the owners adjoining the streets to have free access to their premises held under the original proprietor of the tract embracing the street, of which such owner could not be deprived by the assent or surrender of the public, or of the general owner of the fee of the street, or both, without compensation for his individual interest in the street or easement. This, they said, to preclude the conclusion, if such were possible, that any such an interest could be supposed to have been disregarded. They saw no such question in this case, and were, therefore, for affirmance.

"Judgment affirmed."

Judge EMOTT further, in his opinion (p. 207), says that the use of a street by a steam railroad and a horse railroad is manifestly very different, and (on page 208) "I do not consider that the grant or the exercise of such a privilege (constructing a horse railroad) involves taking or imposing a new burden."

The commissioners, therefore, cannot consider the Kerr case as controlling the questions before them.

Whether the city, as trustee, may be treated as a contractor with those of the public who have paid the assessments to enable it to acquire this fee in trust, and who have been specially damaged by a breach of the trust on which it is held, and the imposition of this new burden; or how far the city might insist that the rapid transit acts impair its obligation under such a contract may be interesting questions, but this commission has nothing to do with them.

The commissioners are of the opinion that after the taking by the city there then remained in the abutting original owners a naked fee with the ultimate right of reverter in the westerly section of South Fifth avenue, and that this fee is of the same quality as the absolute fee which they have in the central section subject to the public easement, and of the same quality as the absolute fee of those of the claimants of the east side in the easterly section, and that its value is the same less the amount which the owners would have to pay to the city for vault purposes. It is only the present estate in fee of the claimants which is different. They have no present estate in fee in the westerly section; only one in expectancy. They have a present estate in fee in the easterly and central sections, and also one in expectancy.

To illustrate: The claimants could not now dig vaults under the westerly section except by license from the city. They could now dig vaults under the central and easterly sections as in their own right, so long as they did not thereby interfere with the public easement and did not render the highway any less secure. Besides these estates in fee the claimants have as easements in the land in the street the right of light, air and access to their lots, which was guaranteed to them when the fee was taken only in trust to keep it open as a street. Every lot owner bought with that statute before him. Every contract and deed for lots in this city is made relying on it. The taking contemplated is a new burden, and the right which the petitioners desire to acquire depreciates the value of the residue of the lands of the claimants and take from them their present rights of light and freedom of access.

III. There is yet one other and different tenure of property by the claimants. That is where their deeds bound them "along or by the side or line of the street," and not "by the street." In accordance with an unbroken current of decisions, the lot owners in such cases have no title to the land in the street. Their title to land stops with the side of the street.

The point is here made by the petitioners that abutting lot owners having no title to the land in the street no land is taken from them; their land not being taken, they are not damaged, and no compensation is to be awarded. It is undoubtedly true that they have no title to the land itself in the street. The following

quotations from the law on the subject have been made by the petitioners:

"In case any company formed under this act is unable to agree * * * it shall have the right to acquire title. * * * (R. S., vol. 2 [6th ed.], p. 523.) For the purpose of acquiring such title * * * may present a petition. * * * It must contain description of the real estate which the company seeks to acquire * * * that the land. * * * is required for the purpose of constructing or operating the proposed road. (Secs. 14, 15.) The commissioners shall * * * ascertain and determine the compensation which ought justly to be made by the company to the owners or persons interested in the real estate appraised by them. (Sec. 18, p. 525.) On such report being made, etc., the court shall thereupon * * * make an order, * * * containing a description of the real estate appraised, for which compensation is to be made. (Sec. 19, p. 526.) And thereupon, and on the payment * * * of the sums to be paid as compensation for the land * * * the company shall be entitled to enter upon," * * * etc. (Sec. 20, p. 526.) If there are adverse and conflicting claimants to the money, or any part of it, to be paid as compensation for the real estate taken." (Sec. 21, p. 526.)

The provisions of this act must be construed, however, in conjunction with the clause of the Constitution under which it was framed, namely: "Nor shall private property be taken for public use without just compensation."

Has not every lot owner a special private right of property in the light, air and access afforded him by an open street? We think he has, without reference to whether he has a title to the land in the street or not.

If he has not, and the arguments of the petitioner's learned counsel be correct, the legislature may, without compensation to the lot owner, empower the petitioners to build solid masonry walls within six inches of the lot owner's front, and two, three or more stories in height, so long as the only use made of the structure is to carry the public. Or, it may empower some other private corporation to build some similar structure, from side to side of the street, for a market or some other purpose, by simply declaring it to be for the public use.

We find, as matter of fact, that the light, air and access of the claimants' lots are interfered with and taken, to an appreciable extent, by the petitioner's acquisition of the lands in question, and, as matter of law, that these are private property rights, and, as easements, appurtenant to the lots fronting on the street, or otherwise, belonging to the abutting property owners, whether the lot owners have or have not title to the land itself in the street.

Unless the general railroad act, under which the petitioners are to acquire title, be so construed that it shall include all private property rights in the term lands, the taking is in violation of the Constitution, and the act would fail, in that respect, to conform to the constitutional requirements.

IV. This brings us to the question of damages.  The estate in the land to be acquired by these proceedings is governed by section 5, chapter 885, Laws of 1872, paragraph 12 of petition, except that by the order of this court, of January 8, 1879, the estate, in parcels four and five, was limited to the right to use said parcels to construct, maintain and operate a railway constructed on the modified plan prescribed by the rapid transit commissioners.  As to parcels other than four and five, the estate taken therein is such as may be necessary "to make such structures as shall secure stability and firmness to the elevated road" (Act of 1872, § 4), and for "stations, * * * platforms," etc. (Sec. 3.)  This, in case the present sub-structure should prove insufficient, would justify the petitioners in building on the land taken such substantial foundations or depots as might be necessary, and would be a very different burden from the limit fixed on four and five in the order, by consent of the parties.

On this question of damages, almost all of the cases hold that the commissioners are not to consider any consequential or prospective damages, or damages which may result from the use to which the land is to be put.  Almost all of them lay down the rule that the commissioners are to estimate, first, the fair market value of the whole parcel, and then the fair market value of the property not taken, and that the difference is the true amount of compensation to be awarded.

The case of the *Canandaigua and Niagara Falls Railroad Company* v. *Payne* (16 Barb., 273), was one in which the commissioners had taken evidence as to consequential injury which a mill

might sustain. The mill was not the parcel of the land taken by the railroad, but was separated from it by a highway. HARRIS, J., at pages 275, 276, lays down the rules above alluded to and sets aside the award.

In the case of the *Albany Railroad* v. *Lansing* (16 Barb.) it appears, at page 69, that the commissioners adopted the rule to allow full compensation for the land taken, including therein the damages to the adjacent land, by reason of such taking, but that they should not allow consequential and prospective damages. At page 70, HARRIS, J., says: " The legislative intent is, I think, very successfully embodied in the rule adopted by the commissioners. * * * The were to consider how the taking of the land, but not the use of it in any particular mode, would affect the residue of the owner's land." At page 72 the court holds there is no error in this principle.

In *Albany and Susquehanna Railroad Company* v. *Dayton* (10 Abb. [N. S.], 185) the court held the measure of compensation to be : (1) The fair value of the land ; and (2) a just compensation for the effect which the taking would have in depreciating the market value of what is left.

In *Matter of Union Village, etc., Railroad Company* (53 Barb., 458), the court says : " These decisions (above) have been too long acquiesced in as sound expositions of the law upon this question to be disturbed without substantial reasons therefor." This case was one in which the commissioners refused to take into consideration increased danger from sparks to a flax mill on lands of owner. Held, correct.

In the *Matter of the Prospect Park and Coney Island Railroad Company* (13 Hun, 345), the following appears (p. 346): The railroad company desired to acquire an easement in a highway for railroad purposes, but not to extinguish the fee. The street was owned in fee by twenty-two different persons, subject to the perpetual easement of the public therein as a highway. The award of the commissioners was one dollar in each case, except three cases. In one of these three, three dollars, and in the other two six cents were awarded. The land owners appealed. (P. 348.) The court set aside the report. (P. 347.) GILBERT, J., says : " The taking of the land in the highway, for the use of the railroad, is a

fresh taking of the property of the landowner, for which he is entitled to just compensation," not to merely nominal damages.

The next case quoted by petitioners is : *In the Matter of One Hundred and Tenth Street* (54 How. Pr., 313), where the Central Park Commissioners closed a portion of the Bloomingdale road, but retained that portion of it required for One Hundred and Tenth street as laid out, and assessed the compensation for the fee of that portion retained in One Hundred and Tenth street at a nominal sum. At page 315 it appears that this rule was prescribed by the legislature. (Laws of 1867, chap. 697.) The court affirmed the award.

This case is in no respect parallel to the one under consideration. If the city were proceeding to take the fee under the act of 1813, in the easterly and central section of South Fifth avenue, the case might be an authority, although even in such a proceeding the value of the right to dig vaults would have to be allowed.

The case of *Bellinger* v. *New York Central Railroad Company* (23 N. Y., 47, 48) is the next one referred to by petitioners. That was an action for damages from a freshet, alleged to have occurred by reason of the construction of a bridge by the defendant over low lands. The defendant sought to prove that the embankment and bridge were carefully and skillfully constructed, which evidence was excluded. Held, error, for which a new trial was granted.

The last case on the petitioners' brief is that of *Patten* v. *New York Elevated Railroad Company* (3 Abb. N. C., 343). The only point decided in that case was that Patten did not own any part of the street in front of his hotel, the deed to him bounding his lot " on the westerly side of Greenwich street," and that he did not own the vault or any right in it which the public authorities could not take away, his right being a mere license and therefore revocable ; and that, therefore, he was not entitled to any compensation for the invasion of his vault by the railroad company.

We now proceed to examine the cases referred to by the claimants on the question of damages. The following have been already considered, viz. : *The Albany, etc., Railroad Company* v. *Lansing* (16 Barb., 68) ; *Matter of Union Village, etc., Railroad Company* (53 Barb., 457) ; *Canandaigua and Niagara Falls Railroad Company* v. *Payne* (16 Barb., 273).

The *Matter of Poughkeepsie and Eastern Railroad Company* (63 Barb., 151) is as follows : Palmer was the owner of an iron ore bed and a railroad, four or five miles long, from his mine to the Harlem railroad. The Poughkeepsie and Eastern railroad commenced proceedings to condemn two and a-half miles of Palmer's railroad at the end nearest the Harlem railroad. The commissioner awarded damages for those two and one-half miles as follows : (1) Value of land taken, including grading done ; and (2) of the iron and ties laid down. They did not award anything for depreciation in value of what was left at the other end of Palmer's four miles of railroad, or for depreciation in value of the mine, by cutting off Palmer's facilities for transportation. Held, that commissioners should have allowed for such depreciation, and new commissioners were appointed and directed accordingly.

In the case of the *Troy and Boston Railroad Company* v. *Lee* (13 Barb., 169), the court sent the proceedings back to enable the commissioners to review their decision as to the amount of damages. * * * If the report is the result of the free exercise of the judgment of the majority of the commissioners who signed the report, in reference to the market value of the property as it was before the railroad was constructed, and as it will be afterwards, it ought not to be disturbed. * * * The opinions of witnesses as to values are to be received as persuasive evidence, and never controlling. The rule laid down in all the foregoing cases would seem to be uniform. The two next cases, it has been supposed, depart from this uniformity. *In the Matter of the Utica, etc., Railroad Company* (56 Barb., 456) it appears, at page 458, that the commissioners had awarded $100 for the value of the piece taken and the depreciation of the remainder of the property by the taking of that piece, but that nothing was allowed for the depreciation of the remainder, occasioned by the increased risk of fire from locomotives ; nor for depreciation in its market value, occasioned by the use of the piece taken for a railroad ; nor from the annoyance, noise, smoke, discomfort and inconvenience of having a railroad located and operated there. At page 466 it was held the report should be set aside and a new appraisal made, in which is to be included all the damages which the appellant will sustain to his premises by the construction and use of the railroad, and includ-

ing compensation for the piece of the lot taken by the road. At page 464, increased risk from fire, and increased difficulty of access and inconvenience to the remainder, by reason of the railroad, and depreciation from noise, smoke, etc., are all directed to be included.

The only remaining case, which is the latest to which we have been referred, is that of *Matter of New York Central and Hudson River Railroad Company* (7 Weekly Dig., 171; also reported Supreme Court Rep., N. Y., 15 Hun, 63). This was an appeal from the report of commissioners.

One Judge, the appellant, was the owner of a lot on which a grocery and dwelling was erected on Broadway, in the city of Albany. The railroad company had for many years had two tracks on Broadway, in front of Judge's lot. In 1874 the railroad company laid two additional tracks. All the land in question had been previously taken by the public for a street, and at each of the times when petitioner's tracks were laid thereon was being used for that purpose.

The commissioners rejected the following evidence offered by Judge: That one hundred and twenty trains passed over the new tracks up between 5 A. M. and 9 P. M., and a proportionate number between 9 P. M. and 5 A. M.; that the cars are heavily loaded and cause great and injurious jar to the walls of such building. That since the laying of the new track his building has been seriously injured by jarring caused by trains, so that the walls and partitions were shaken down and the stairway had to be rebuilt, and that repairs to the extent of one thousand dollars per year were made necessary; that the portion of his lot not taken was depreciated in value by the noise, smoke and increased danger caused by the trains on this new track.

The court, after citing a great many cases, holds that this evidence should have been received. On page 68, the rule laid down (20 N. Y. S. C. R. [13 Hun], 345) in the opinion of GILBERT, J., is quoted with approval, namely: "The true inquiry is, what was the whole property, from which the railroad was severed, fairly worth in the market before the taking, and what was its value with the railroad upon the land taken?"

It will be observed that these two last cases relate to city property taken by a railroad; that the principles of law recognized in

the opinion are the same as stated in the other cases, and that it is only in the application of these principles that they possibly appear to differ. The commissioners, in making their award, have considered what the property was fairly worth before the taking by the railroad, and what the property left, after the taking, was fairly worth, and have awarded the difference as compensation for the taking.

The properties to be appraised are of the following kinds :

### ON THE EASTERLY SIDE.

I. A fee in the abutting lot owner in the easterly twenty-five feet of South Fifth avenue, subject only to the easement of the public therein as a street. As an incident of this fee, the right to have no new burden cast upon the land without his consent or compensation. Apart from the fee and this incident a special, private property right that the air, light and access afforded by an open public street shall not be taken without his consent or compensation. The lot owner in this case has the right to dig vaults without the payment to the city for a license. Compensation in this case is to be made to the lot owner for the fee and for the air, light and access.

II. No title whatever in the land in the abutting lot owner. The fee, in this case, being in some prior unknown lot owner, who conveyed the lot bounding it by the easterly "line" or "side" of Laurens street, to whom compensation is to be made for his title, which is subject to the public easement for street purposes. The lot owner, in this case, having only a special private property right that the air, light and access afforded by an open public street shall not be taken without his consent or compensation. The lot owner, in this case, could not dig a vault against the will of the owner of the fee, even with a license from the city. The compensation to the lot owner, in this case, is for air, light and access. The compensation for the fee is to the unknown owner.

### ON THE WESTERLY SIDE.

The several lot owners on this side of the South Fifth avenue have the same kind of properties in the central twenty-five feet of the avenue, as above stated at I and II, in regard to the easterly twenty-five feet.

III. A fee in the abutting lot owner in the westerly twenty-five feet, subject only to the fee in the city, in trust to keep the land

open as a street. As an incident of this fee of the lot owner is the right to have no new burden cast upon the land without his consent or compensation. Apart from the fee and this incident, a special private property right, that the air, light and access afforded by an open public street, shall not be taken without his consent or compensation. The lot owner here has to be compensated for his fee and the air, light and access.

IV. No title whatever in the land in the abutting lot owner. The fee, subject to the title acquired by the city in 1870, being in some unknown owner, who, since 1870, has conveyed his lot, bounding it by the westerly "line" or "side" of South Fifth avenue. The abutting lot owner in this case, having only a special private property right that the air, light and access afforded by an open public street, shall not be taken without his consent or compensation. The only compensation in this case, if for the air, light and access, to be made to the abutting owner. Any compensation for the fee remaining in the former unknown owner, subject to the city's title, is to be made to him.

New York, *March* 31.

JOHN H. SHERWOOD
EDWARD MITCHELL.

*Charles W. Wetmore,* for the petitioner.

*John E. Parsons,* for Amos F. and Amos R. Eno, owners.

Brady, J. :

In the opinion delivered by two of the commissioners, the various questions, which were suggested during the investigation, are elaborately considered, and there seems to be no reason, since the decision of the case of *Story* v. *New York Elevated Railroad Company* (90 N. Y., 122), for disturbing any of the conclusions at which they arrived, except one. The rule of damages adopted is sustained by the cases cited, and as the commissioners are not controlled in their estimates by strict judicial rules, and may act upon personal examination and inspection of the subject-matter of the controversy, a palpable violation of established rules should be shown to justify the interference of this court. And this view embraces and disposes of the contention that the commissioners failed to allow for the improvements made upon the property. It is to be assumed

that they did so in declaring the damages sustained. The adjudication referred to, in effect, declares that the abutting owners, on the westerly side of the avenue, are entitled to protection and compensation, notwithstanding the change made in the width of the street. It is only where the title is acquired in fee simple absolute that the property may be converted to other public uses, or the particular use ceasing, may be sold and converted to private uses. The city, by the proceedings in *invitum*, under the act of 1813, secured a fee in the additional strip, in trust, however, for a particular public use. The act of 1813 proceeds upon the assumption that the opening of a street makes the property abutting thereon available for the purposes of trade and commerce, and greatly enhances its value; and the damages sustained, by reason of the taking, are assessed in view of the trust assumed by the public that such lands are to be open as public streets forever. The public do not assume to take the lands in fee simple absolute, but take and pay for a lesser estate. The owner parts with no rights, save such as are necessary to secure the land for street purposes. (Per DANFORTH and TRACY, JJ.)

These views equally apply to widening a street when the additional space is acquired by condemnation under the act of 1813. The abutting owner has the benefit of the change, and the taking of the new strip or boundary of it does not create a substitute for the former one, does not destroy his rights in it, they remain intact notwithstanding the change in locality of the original strip or front occasioned by the widening. The strip remains a part of the street with the reserved rights incidental thereto, no other than a lesser estate in it having been acquired by the city. The commissioners were quite right, therefore, in awarding compensation for the damage to land on the westerly side.

It is thought, however, that the commissioners were in error in supposing that the appellants Eno were not entitled to all the awards. It is true there may be authorities which will sustain the proposition that by the terms of the grants affecting these awards the grantees acquired no title to the bed of the street, but, as said in the case mentioned, there is no evidence that the grantors did not intend to convey their entire estate or to except the title conveyed from the operation of the general rule that a lot bounded on a street extends to its center. This view is regarded as the latest exposition

of the rule governing kindred cases, and is a just one. There should be in each conveyance, where the subject is bounded by a street, some reservation of an interest in the bed of the street by appropriate phrase, covenant or particularity of description which leaves no doubt of the intention. There can be little serious question that in a great majority of cases, in which grants are made of property bounded on a street, no thought is entertained of preserving any further interest in the plot transferred. The conveyancer may indulge in this fancy, but the grantor rarely.

This appeal has been examined many times and always with the result foreshadowed by this opinion, namely, that the report of the commissioners should in all respects be confirmed except as to the awards directed to be deposited, and as to these it should be modified by directing the awards to be paid to the Eno claimants, and it is ordered accordingly. No costs allowed to either party of this appeal.

DANIELS, J., concurred.

Present — DAVIS, P. J., BRADY and DANIELS, JJ.

Proceedings modified as directed in opinion, and affirmed as modified, without costs of appeal to either party.